**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ASHLEY BENNETT,        )<br>                                         )<br>     Petitioner,               )<br>                                         )<br>vs.                                     )<br>                                         )<br>E.K. MCDANIEL, *et al.*,      )<br>                                         )<br>     Respondents.          )<br>_____/ | 3:06-cv-536-ECR-VPC<br><br>ORDER |

This action proceeds on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, by petitioner Ashley Bennett, a Nevada prisoner represented by counsel. Respondents have filed an answer (docket #36) to the amended habeas corpus petition. For the reasons stated below, Petitioner's habeas corpus petition will be denied.

**A.   Background**

This case involves the state court conviction of petitioner on charges of first degree murder with the use of a deadly weapon, resulting in two consecutive life sentences without the possibility of parole. Petitioner was originally charged with five other defendants with Conspiracy to Commit Murder, Murder with the Use of a Deadly Weapon with Intent to Promote, Further or Assist a Criminal Gang. Petitioner was appointed Scott Bindrup from the murder conflict panel to represent him.

The conspiracy and gang enhancements were not supportable at preliminary hearing and those charges were dismissed, along with three of the defendants. Petitioner, along with Lailoni

Morrison and Anthony Gantt were bound over on Murder with the Use of a Deadly Weapon charges. The three defendants' cases were severed and Gantt entered into a plea agreement promising to testify against petitioner.

While Bindrup was counsel of record, his associate, Melinda Simpkins, worked closely with him, assuming responsibility for a significant part of the case. Simpkins had been practicing law for only three months and had no felony trial experience. Petitioner was convicted as charged following a nine-day trial. Thereafter, petitioner filed a motion for new trial which was denied. Prior to sentencing, Bindrup moved to withdraw as attorney of record. The motion was granted and new counsel was appointed for sentencing, where petitioner was sentenced to two consecutive life terms without the possibility of parole.

Petitioner's direct appeal was unsuccessful as was his state post-conviction efforts. Petitioner is now before this court, raising five grounds for relief.

**B.     Analysis**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003), citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell*, 535 U.S. at 694.

Furthermore, a state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 73. The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* The state court's factual determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**Ground One**

Ground one of Petitioner's federal habeas petition alleges that his primary trial counsel was inexperienced and newly admitted to the bar causing him to receive ineffective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights.

Petitioner argues that counsel's inexperience made her unable to properly cross-examine crucial witnesses. Petitioner contends that Ms. Simpkins, an attorney who had only be licensed to practice for approximately three months at the time of trial, was charged with the responsibility for preparing the majority of the case and failed in that task. He suggests that Simpkins was unprepared to present petitioner's defense witnesses because she had never conducted direct examination of any witness prior to petitioner's trial and, as a result, she was "unable to elicit information that was necessary to present a defense" on petitioner's part. Petitioner does not specify what information Simpkins should have, but did not bring out through her examination.

Respondents note that the Nevada Supreme Court denied this count after applying the proper federal legal standard as established under *Strickland v. Washington,* 466 U.S. 668 (1988),

and argue the claim is belied by the record.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards by which claims of ineffective counsel are to be measured. The Court propounded a two prong test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

The limited experience of a criminal defense attorney, by itself, is insufficient to support a claim of ineffective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 665(1984); *Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir.1998). Because petitioner has failed to demonstrate specifically what evidence counsel was unable to present, he has failed to demonstrate that Simpkins' performance actually prejudiced him as required under *Strickland*. Moreover, it was Bindrup, the highly experienced attorney who was actually appointed as petitioner's counsel and who employed Ms. Simpkins, who cross-examined the chief witnesses against petitioner. As was brought out during the evidentiary hearing on state post-conviction review, although Simpkins had only been a lawyer for three months, she had worked with Bindrup as a paralegal for many years. As a result, Bindrup was well aware of her experience and her legal knowledge. Additionally, with the exception of a short period of time during voir dire, Mr. Bindrup was present at counsel table for the entire trial, available and assisting Ms. Simpkins in her handling of the examinations.

This court has reviewed the transcripts of the trial, and having done so, finds that the Nevada Supreme Court's decision to deny this claim was not an unreasonable determination of the facts in light of the evidence. Simpkins' participation in the trial does not reflect the skills of a novice attorney and counsel Bindrup was present at the proceedings and fully participated therein. Petitioner is not entitled to relief on Ground one.

**Ground Two**

Ground two of Petitioner's federal habeas petition alleges that his constitutional right to a fair trial was violated because a critical state witness – one of only two that identified petitioner as a shooter – committed perjury while testifying against him.  Petitioner references an affidavit signed by Wayne Gantt on July 3, 2002 and presented to the state district court in support of the supplement to his state post-conviction petition for writ of habeas corpus. *See* exhibit "A" to the Supplement to the Petition for Writ of Habeas Corpus (Exhibit 33 to the State's Motion to Dismiss).

Mr. Gantt, who was fifteen at the time of the shooting, avers in his affidavit that he had been unduly pressured by police and his counsel to name petitioner as being involved in the homicide through threats to seek the death penalty against Gantt if he refused.  Gantt further avers that he made false statements and offered false testimony against petitioner.   He contradicts his trial testimony by stating that he "did not see Ashley Bennett nowhere at the crime scene" and stating that Ashley Bennet is innocent of the charge of homicide for which he is imprisoned. *Id.*

In addressing this claim, the Nevada Supreme Court cited to and relied upon *Callier v. Warden,* 111 Nev. 976, 901 P.2d 619 (1995). *Callier* sets out a four-part analysis to be used in Nevada in determining whether recantations of witness testimony would require a new trial.  The analysis includes a determination that (1) the court is satisfied that the trial testimony of material witness was false; (2) the evidence showing that false testimony was introduced at trial is newly discovered; (3) that the evidence could not have been discovered and produced for trial even with the exercise of reasonable diligence; and (4) it is probable that had the false testimony not been admitted, a different result would have occurred at trial. *Callier,* 111 Nev. at 990, 901 P.2d 627-628. This standard is similar to that approved by the Ninth Circuit in *U.S. v. Krasny,* 607 F.3d 840 (9th Cir. 1979) *cert. denied* 445 U.S. 942 (1980), which held,

> In general, a defendant seeking a new trial on the basis of newly discovered evidence must meet the following requirements: (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i. e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the

issues involved; and (5) must be such as, on a new trial, would Probably produce an acquittal.

*Id.* at 843.  This standard, applied most consistently by the Ninth Circuit has not been adopted by a majority of the circuits.  The majority seem more inclined to adopt a less stringent standard requiring only a showing that the new evidence would produce a possibility of acquittal.  *See, e. g., United States v. Wallace*, 528 F.2d 863, 866 (4th Cir. 1976) (witness recantation); *United States v. Anderson*, 165 U.S.App.D.C. 390, 405, 509 F.2d 312, 327 n.105 (D.C.Cir.1974) (dictum), *Cert. denied*, 420 U.S. 991 (1975); *United States v. Smith*, 433 F.2d 149, 151 (5th Cir. 1970) (per curiam); *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949), *Cert. denied*, 339 U.S. 935 (1950); *Larrison v. United States,* 24 F.2d 82, 87 (7th Cir. 1928). *See generally 2 C. Wright, Federal Practice and Procedure* § 557, at n.24 (1969 & Supp. 1979).  Despite there being a disagreement among the circuits as to whether the required showing is that the new evidence will "probably" obtain an acquittal or merely make acquittal a "possibility," the United States Supreme Court has not spoken on the subject.  Thus petitioner cannot attack the decision on the basis that it is an objectively unreasonable or incorrect application of clearly established federal law as determined by the United States Supreme Court.  His sole remaining recourse is a showing that the decision was an unreasonable factual determination.

The Nevada Supreme Court determined that Gantt's affidavit was not newly discovered evidence.  It was available in 2002, but it was not presented to the court until 2005.  This conclusion is not unreasonable.  Although Nevada law allows new evidence claims to be presented in a post-conviction petition for writ of habeas corpus rather than a motion for a new trial, the Nevada Supreme Court's determination as to the age of the affidavit is accurate.  It was executed by Gantt and notarized on July 4, 2002.  See Exhibit 33.  The affidavit was not presented to the state court until it was attached by counsel to the supplemental petition for post-conviction review filed on March 4, 2005.  *Id.*  Petitioner feasibly could have presented the affidavit at a much earlier time.

The court further concluded that the affidavit would not have ensured a different result at trial given the testimony of Pamela Neal, who also identified petitioner as one of the killers. This factual determination is also supported by the transcript of proceedings, a review of which reveals adequate evidence to support the conviction, even without Mr. Gantt's testimony.

While the Nevada Supreme Court did not directly address the remaining two factors, apparently finding that the miss on two points was sufficient to end the inquiry, that does not make the decision erroneous or unreasonable as petitioner must meet all the elements of the test and has failed to do so.

**Ground Three**

Ground three of petitioner's habeas petition alleges that his right to the effective assistance of counsel was violated when counsel failed to interview or speak to petitioner's alibi witnesses prior to trial.

Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. More specifically, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

The facts alleged in this claim are belied by the record. Ms. Simpkins testified at the state court evidentiary hearing that she had interviewed all of petitioner's alibi witnesses, that she had discussed the interviews with lead counsel and had been advised by him as to what questions would be appropriate to ask those witnesses. Exhibit 24, pp. 43. Thus, petitioner cannot succeed on this claim and the Nevada Supreme Court's decision was not improper.

**Ground Four**

Ground four of petitioner's habeas petition alleges that his right to confront and cross-examine witnesses against him was violated because the court improperly limited the examination of Pamela Neal. Ms. Neal, one of the principal witnesses against petitioner, was questioned on direct examination by the prosecution about the existence of certain criminal charges that had been lodged

1  against her and then subsequently dismissed right about the time she testified at petitioner's
2  preliminary hearing.  She testified that the charges were dismissed because of a lack of evidence.
3  Thereafter, petitioner sought to attack the credibility of the witness by questioning her on the
4  underlying facts of those charges.  The court disallowed the questioning.  Petitioner also wanted to
5  bring in certain statements that Ms. Neal purportedly made regarding her motive for going to police
6  and testifying against petitioner via the testimony of her brother. This testimony, too, was disallowed
7  by the court which found it to be inadmissible hearsay.

8       A criminal defendant's Sixth Amendment rights include the right to  cross-
9  examination, *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974), and to present relevant evidence,
10  *Michigan v. Lucas*, 500 U.S. 145, 149-52 (1991).  However, "trial judges retain wide latitude insofar
11  as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on
12  concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'
13  safety, or interrogation that is repetitive or only marginally relevant." *Wood v. Alaska*, 957 F.2d
14  1544, 1549 (9th Cir.1992).

15       In order to determine whether a Sixth Amendment violation occurred, it is, therefore,
16  necessary to make a two-part inquiry. *Wood*, 957 F.2d at 1549-50.  First, the Court must inquire
17  whether the excluded evidence is relevant. *Id*. at 1550.  If the evidence is relevant, the Court asks
18  next whether other legitimate interests outweigh the interest in presenting the evidence. *Id*.  There is
19  a Sixth Amendment violation if the trial court abuses its discretion. *Id*.  If the Court finds that there
20  was a Sixth Amendment violation, the Court must then determine whether or not that error was
21  harmless.  A claim that a trial court erred by limiting cross-examination in violation of a defendant's
22  Sixth Amendment rights is subject to harmless-error analysis. *See Delaware v. Van Arsdall*, 475
23  U.S. 673, 684 (1986).  When seeking a writ of habeas corpus on the basis of trial error, the petitioner
24  must demonstrate that the trial error "had substantial and injurious effect or influence in determining
25  the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Bonin v. Calderon*, 59
26  F.3d 815, 824 (9th Cir. 1995).  In other words, a petitioner must establish that the error resulted in

"actual prejudice." *See Brecht*, 507 U.S. at 637.

In deciding this claim in state court, the Nevada Supreme Court said:

> Bennett argues that the district court's ruling limited his ability to show Neal's bias and motive to fabricate. We disagree. Bennett was permitted to inquire concerning the events surrounding Neal's arrest, the specific charges she faced, and her belief that a GPK member was responsible for the death of her cousin, Eric Bass. Additionally, Bennett elicited adequate testimony from Neal regarding dismissal of her criminal charges to imply that the charges may have been dismissed in return for her favorable testimony. Since the district court limited Bennett's impeachment of Neal only by the restriction that Bennett was not to try to prove whether Neal in fact committed the crimes she was charged with, we conclude that the district court acted within its discretion and did not err in limiting Bennett's cross-examination of Neal.

Exhibit 21, pp. 4-5.

The Nevada Supreme Court's evaluation of this claim was accurate. First, the specific facts related to what Ms. Neal had been charged with were not relevant to petitioner's defense. The court also determined that the information sought by the defense in trying to bring out the facts underlying the charges would not have added any relevant or legitimate information about petitioner's guilt that could not come in by other means. Counsel was able to question Neal about the charges, to present to the jury the fact that they were brought and to question her about her motivation to testify. Further, questions to other state witnesses supported Neal's assertion that she was not granted immunity or given a deal for her testimony and the jury was made aware that the State gave her money to help her relocate her family to a different neighborhood. The jury would have been able to use this information in evaluating her credibility.

The Nevada Supreme Court was correct in its determination of this claim and there was no error or unreasonableness in its legal or factual determination.

Ground Five

Petitioner's final claim for relief is that his appellate counsel was ineffective for failing to raise issues on direct appeal that he has raised to this federal court in these proceedings. Specifically, petitioner contends that counsel should have raised the district court's error in denying

petitioner's motion for a new trial based upon the district court's limits on allowing petitioner to impeach Neal through exculpatory evidence. He contends that counsel's failure to properly cite to the record prevented the Nevada Supreme Court from properly considering this issue.[1]

The due process clause of the Fourteenth Amendment guarantees a criminal defendant the right to the effective assistance of counsel in direct appeal. *Evitts v. Lucey,* 469 U.S. 387 (1985). The same standard for evaluating performance of counsel on trial applies in the appeal process. *Smith v. Murray,* 477 U.S. 527, 533 (1986). In order to show the requisite prejudice on a claim of ineffective assistance of appellate counsel, petitioner must demonstrate that the claim would have been successful on appeal. *Miller v. Keney,* 882 F.2d 1428 (9th Cir. 1989).

Petitioner cannot prevail on this claim. On direct appeal the Nevada Supreme Court considered petitioner's claims that the district court improperly limited cross examination of Pamela Neal and the testimony of petitioner's witnesses, Reginald Don Fobbs and Lakiesha Reed, which testimony, he contends, should have been admitted to impeach the credibility of Neal with prior inconsistent statements. The Nevada Supreme Court denied relief on this claim explaining the standard for admissibility of hearsay testimony and finding that, because there had not been a proper opportunity for Neal to admit the statements which would have warranted the rebuttal testimony from Fobb and Reed, their testimony about out-of-court conversations was clearly inadmissible.

Because petitioner has not demonstrated that the Nevada Supreme Court's decision on this claim was an unreasonable or contrary application of clearly established federal law or that its factual determinations were unreasonable in light of the evidence, he cannot obtain relief on this claim.

Finally, petitioner suggests that he should be allowed discovery and the ability to supplement the petition based upon that discovery. This request is made pro forma and is not

---

[1] It is not clear to this court what claim appellate counsel should have raised but did not. It appears the claims addressed by the Nevada Supreme Court on appeal are very similar, if not identical, to the one petitioner claims was missing. Petitioner must provide sufficient specificity for his claims to obtain a thorough review. *Jones v. Gomez,* 66 F.3d 199, 205 (9th Cir. 1995), *cert. denied,* 517 U.S. 1143 (1996).

10

supported with the specifics required under the rules governing section 2254 petitions. *See Id.,* Rule 6.

**Certificate of Appealability**

In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Amended Petition for Writ of Habeas Corpus (docket #33) is **DENIED**.

/ / /

/ / /

/ / /

1        **IT IS FURTHER ORDERED** that the certificate of appealability is **DENIED.** The
2 Clerk shall enter judgment accordingly.
3     Dated this  18th  day of May , 2010.

*Edward C. Reed*
UNITED STATES DISTRICT JUDGE